372 So.2d 687 (1979)
The HUT OF LOUISIANA, INC.
v.
ZURICH INSURANCE COMPANY.
No. 12661.
Court of Appeal of Louisiana, First Circuit.
May 29, 1979.
Rehearing Denied July 16, 1979.
Joseph A. Koury, Lafayette, of counsel, for plaintiff-appellant The Hut of Louisiana, Inc.
*688 David Robinson, Baton Rouge, of counsel, for defendant-appellee Zurich Insurance Co.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment awarding an allegedly insufficient recovery for a fire loss insured by defendant Zurich Insurance Company (Zurich). In addition to seeking an increase in the award for merchandise, furniture and fixtures destroyed by fire in Appellant's retail clothing store, Appellant seeks penalties and attorney's fees for Zurich's allegedly untimely payment of the losses. We affirm.
The fire in question occurred December 21, 1976, and resulted in considerable damage to the leased building in which Appellant conducted a retail clothing outlet under the trade name, The Hut. The building, which was owned by Gordon Ogden, Jr. (Ogden), was located at 6833 Plank Road, Baton Rouge, Louisiana. Prior to the fire Appellant had done business at this location only since October 22, 1976, a period of approximately two months. On December 15, 1976, six days prior to the fire, an inventory of Appellant's store was taken by Jack Windham, Deputy Sheriff, pursuant to a writ of seizure obtained by Appellant's landlord incidental to an action brought by said lessor against Appellant for untimely payment of rent due on the premises.
For all practical purposes, Appellant's business was run by Alfred Mahfouz, Sr. (Mahfouz), who apparently owned several retail outlets similar to the one involved herein. Subject store, however, was managed mostly by Mahfouz' son, Alfred, Jr. On December 27, 1976, Mahfouz filed with Zurich a proof of loss unaccompanied by any supporting documents other than the inventory taken by Windham, and supplemented by an additional inventory of store furniture and fixtures taken by Mahfouz. The inventories aggregated $61,334.30. On March 15, 1977, Mahfouz assigned $1,500.00 of his claim against Zurich to one Robert L. Waller, Jr. On May 16, 1977, Zurich entered into an agreement (by letter) with Mahfouz pursuant to which Zurich paid Appellant the sum of $10,000.00 in consideration of Mahfouz' agreement to cooperate with Zurich's accountant in furnishing satisfactory proof of loss. The draft issued by Zurich for said amount was made payable to Appellant and Waller. It is shown by the record that following the fire, tax liens were filed against Appellant by the Internal Revenue Service and the Louisiana Department of Revenue.
The insurance policy in question provided coverage for the contents of the building up to limits of $50,000.00 and, in addition, provided coverage of $16,000.00 for loss of earnings by Appellant.
The trial court awarded Appellant $36,858.00, which figure represents 60 percent of the retail value of Appellant's merchandise as shown by the Windham inventory. In addition, the trial court awarded Appellant $8,253.02, being one-half of the furniture and fixtures inventory by Windham as supplemented by Mahfouz, which inventories totalled $16,506.04, making a total loss of $45,111.02, which was incorrectly computed in the judgment to aggregate $45,053.60, subject to a $10,000.00 credit for amounts previously paid.
Appellant contends the trial court erred in discounting the merchandise inventory 40 percent because subject policy obligates Zurich to pay the actual cash value of merchandise destroyed. Appellant also urges error on the part of the trial court in disallowing loss of earnings, penalties, and attorney's fees.
Appellant's claim for penalties and attorney's fees is based on the contention that adequate proof of loss was timely made and, alternatively, that Zurich conceded some loss by paying the $10,000.00 part payment thereon, which partial payment was not timely made.
As correctly argued by Appellant, proof of loss need not necessarily be in writing or in any other formal style. Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App. 1st Cir. 1965); Paul v. National American Insurance Company, 361 *689 So.2d 1281 (La.App. 1st Cir. 1978). This does not mean, however, that an insured need not furnish satisfactory and acceptable proof of loss.
The record shows that the inventory taken by Windham was in the form of a count of goods on racks, shelves, and in drawers. The inventory included a description of the articles, such as dresses, jeans, blouses, etc., with the retail price of each article as indicated by price tags thereon and the number of such articles (e. g., 8 dresses at $9.95 each). Windham did not make extensions of each such inventory unit. If no retail tags appeared on merchandise, Windham accepted the word of Mahfouz or his son as to the value of the articles and entered the unit price given. In making the inventory Windham was assisted by Ogden and three or four other persons. It is conceded that during the taking of the inventory, Ogden and Mahfouz discussed the possibility of settling Ogden's action. Following the fire, Mahfouz made the line extensions on Windham's inventory by simply multiplying the number of items by the unit price. As to the valuations of furniture and fixtures, Mahfouz entered the value of each article (such as desk, chair, file cabinet, cash register, etc.) partially from his memory of what he paid for each item or from prices obtained by consulting catalogues. Mahfouz conceded that all furniture and fixtures were secondhand, having been brought to Baton Rouge from a store he had operated in Mississippi.
Zurich explained its failure to pay, despite the proof of loss and inventories submitted by Mahfouz shortly after the fire, on the ground that Mahfouz was requested to furnish invoices for goods purchased for the location in question and actually placed on these premises for retail. Appellant contends he could not furnish such information because: (1) a considerable portion of his purchases were for cash; and (2) most of the invoices he had were destroyed in the fire. Zurich concedes that three or four invoices were supplied.
Ogden (a disinterested party so far as this litigation is concerned), Ogden's attorney, Gray Sexton, and A. Edgar Thomas, a CPA in Zurich's employ, testified in essence that during their negotiations with Mahfouz they were told by Mahfouz that he dealt in "hot goods," purchased from bankrupt firms, damaged merchandise, and purchases at fire sales which could be cleaned up and sold as new. In addition, these witnesses testified that Mahfouz told them he bought goods at one-tenth of his retail markup price, that is, if he bought an article for $1.00 he retailed it for $10.00. These same parties also testified that Mahfouz told them that he, Mahfouz, never reported more than 30 percent of his sales because he could only account for 30 percent of his purchases.
Mahfouz testified that he purchased from discount houses, bankrupt firms, and firms going out of business. He denied having told Ogden, Sexton, and Thomas that he dealt in "hot goods" or that he could account for only 30 percent of his purchases. He claimed that his invoices were either destroyed in the fire or that many of his purchases were from sources that would not give invoices. Insofar as concerns destruction of records and invoices in the fire, Ogden contradicted Mahfouz by stating that the office portion of The Hut was the least damaged in the fire.
Under the circumstances we find no error in the trial court's discounting the inventories by 40 percent. Nor do we find error in the denial by the trial court of Appellant's claim for penalties and attorney's fees. Such fees are due only when the insurer's failure to timely pay a loss is arbitrary or unreasonable or capricious. LSA-R.S. 22:658. In view of Appellant's failure to produce adequate proof of purchases and costs for inventory in the store in question, we find nothing arbitrary, capricious, and reasonable in Zurich's failure to pay Appellant's claim sooner under the circumstances of this case.
Nor do we find that payment in part by Zurich constitutes ground for invoking penalties and attorney's fees herein. It is clear from Zurich's correspondence regarding the payment that the amount was tendered *690 solely as a convenience to Appellant in return for Appellant's promise to cooperate more fully in furnishing Zurich acceptable proof of inventory purchases, and not as an admission that any particular amount was due.
In support of its claim for loss of profits, Appellant produced no ledgers, no bank account of deposits, or other evidence of sales except daily cash register tapes. Mahfouz explained that he dealt in cash both as to sales and purchases and therefore had no need of a checking account. Mahfouz produced sales tapes for the period October 22, to December 20, 1976, aggregating $42,335.31, which tapes contained admitted alterations. Mahfouz explained this by stating that the proceeds of sidewalk sales were always added to that same day's in-store sales by changing the tapes to reflect the amount of sidewalk sales. Such changes were made by changing an in-store sales day of $325.42, for example, to show additional sidewalk sales of $500.00 by simply changing the 3 to an 8. In like manner, a $600.00 sidewalk sale daily receipt was entered by changing the cash register tape receipt of $161.78 to $761.78 by converting the 1 into a 7. A sidewalk sale entry of $1000.00 was accomplished simply by adding a 1 in front of the daily in-store sales shown on the same day's tape. Mahfouz acknowledged that in the case of each such alteration, the sidewalk sales reflected sales in even hundreds of dollars. Other than by his own testimony, Mahfouz could not substantiate his business expenses other than rent. He detailed expenses such as salaries, insurance, utilities, and advertising, very little of which he could substantiate by check or receipt. He explained again that he conducted his business entirely by cash. His analysis, thus achieved, showed a profit of some $8,000.00 during his period of operation. Considering the nature of the proof of loss of earnings offered herein, we find no manifest error in the trial court's disallowance of this item of damages. It is elementary that a plaintiff must prove every element of damages by a preponderance of acceptable evidence.
The judgment of the trial court awarding Appellant $36,858.00 for loss of merchandise and $8,253.02 for loss of furniture and fixtures is affirmed. The judgment, however, is amended so as to aggregate the sum of $45,111.02, subject to a credit of $10,000.00.
AMENDED AND AFFIRMED.