420 So.2d 526 (1982)
Stella Louise ABRAHAM, nee Guiden, Plaintiff-Appellant,
v.
HANOVER INSURANCE COMPANY et al., Defendants-Appellants.
No. 14989.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
*527 Donald R. Miller, P.C., Shreveport, for plaintiff-appellant.
Blanchard. Walker, O'Quin & Roberts by Jerald L. Perlman, Shreveport, for defendants-appellants.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Defendants appeal a judgment rendered against them in favor of a plaintiff who *528 was injured when she tripped over a wire in the parking lot of a convenience store. It was asserted that the trial judge erred in (1) fixing the degree of plaintiff's contributory negligence at 10% rather than a minimum of 40%; (2) awarding plaintiff an excessive sum for general damages; and (3) making an award for lost wages.
Plaintiff answered defendants' appeal and also appealed, contending that the trial judge committed error in (1) failing to find plaintiff free of fault; (2) making an inadequate award for general damages; (3) failing to make an award for diminution of earning capacity; (4) failing to assess defendant insurance company with payment of penalties and attorney fees for its arbitrary refusal to pay undisputed medical expenses due under an insurance contract; and (5) failing to include Dr. Burt's bill for $110 in the award for medical expenses.
Factual Context
On October 31, 1980, at about 9:30 o'clock P.M., plaintiff, a 33 year old female, accompanied by her 10 year old daughter, drove a friend's pickup truck to the Sack and Pack convenience store on Line Avenue in Shreveport, some four blocks from plaintiff's residence, and parked in the store parking lot. Leaving her daughter in the vehicle, plaintiff entered the store and purchased three large bottles of soft drinks. She then left the store, carrying the soft drink bottles in a paper sack in her arms, with a large purse hanging by its strap from her left shoulder. As she walked toward the truck, plaintiff tripped over a section of wire running between metal posts about 18 inches above the parking lot surface, which the store operator had installed to mark off a personal parking place. Plaintiff fell face forward onto the surface of the parking lot, sustaining the physical injuries for which she seeks compensation. She returned home and then, because of her pain and discomfort, went to the emergency room of a local hospital.
This suit was brought against Sam Digilormo and S-Dig, Inc. (referred to hereinafter jointly as "Digilormo"), as alleged operators of the convenience store, and their liability insurer, The Hanover Insurance Company.
Plaintiff's Comparative Negligence
At the trial it was stipulated that "the condition that existed on the premises the day this accident took place ... did constitute a premises hazard." Consequently, defendants directed their efforts to the reduction of plaintiff's recovery by proof of her comparative negligence.[1]
Plaintiff testified that she had visited the convenience store in question some five or six times prior to the day of the accident the last time just a day or so before the mishap. She conceded prior knowledge of the existence and location of the wire over which she tripped. Her explanation for the accident was that, with the sack of bottles in her arms and preoccupied with returning to her young daughter left in the truck at night in a high crime area, she forgot about the existence of the wire and, failing to look down, inadvertently tripped over it.
In an excellent, comprehensive written opinion, the trial judge noted:
"The facts show, however, that the barbed wire fence did not have any distinctive color, flag or other markers. Further, the barbed wire was strung eighteen (18) inches from the ground around a parking space immediately in front of the entrance/exit to the store where it was reasonably foreseeable that patrons would be carrying packages, distracting their view and their attention from the path immediately in front of them.

*529 "... [t]he overwhelming weight of fault for the occurrence of the accident in the instant case is the lack of adequate lighting in the parking lot, the extremely hazardous location of the poles and barbed wire, and the total lack of barriers, flags or other markers alerting patrons to the extreme hazard. Since the plaintiff had visited this store on five or six prior occasions, she must be held at fault to a degree because of her prior knowledge of the hazard. However, this knowledge on her part does not require imposition of a high degree of fault, as would be the case if she visited this store daily, was an employee of the store, or if the accident had occurred during daylight hours."
The trial judge then proceeded to assess the fault of Digilormo at 90% and the negligence of plaintiff at 10%.
On appeal, defendants argue that, given her prior knowledge of the premises hazard and her admitted inattentiveness, plaintiff's degree of negligence contributing to the accident should have been fixed at a minimum of 40%.
Based upon our review of the record, we cannot say that the trial judge was clearly wrong in his apportionment of fault/negligence for the accident. To the contrary, for the detailed reasons explicated by the trial judge, which we adopt as our own, we conclude that there was a correct disposition of this issue.
General Damage Award
Dr. A. E. Dean, a Shreveport orthopedic surgeon, examined plaintiff in the hospital emergency room on the evening of the accident and found that she had sustained a fracture of the right elbow, together with contusions of the left hand and right knee. Plaintiff was admitted to the hospital the following day. On November 4, 1980, Dr. Dean performed surgery on the right elbow, consisting of an open reduction and placing of a pin in the elbow, with the application of a cast to immobilize the elbow. Plaintiff was discharged from the hospital on November 10, 1980.
Dr. Dean saw plaintiff again on November 12 and November 20, 1980. The arm cast was removed on December 10, 1980, at which time X-rays revealed good signs of early healing. Dr. Dean saw plaintiff subsequently on January 17, 1981, and found that she had a good range of motion in the injured elbow, but noted that the pin could not be removed until sometime later. He concluded, upon this occasion, that plaintiff could return to work provided she did not attempt to rest her right elbow on a hard surface or engage in activity which might cause her to bump the elbow. He assigned to plaintiff a 5% residual disability pertaining to her right arm.
During the ensuing months in 1981 Dr. Dean saw plaintiff on February 4, March 18, May 5 and June 15, at which time she was discharged from his care. On June 23 the pin was removed from her elbow in outpatient surgery. On each visit to the doctor, plaintiff complained of intense pain in her injured elbow. However, Dr. Dean could discover no objective basis for that degree of discomfort.
Considering the nature of plaintiff's injuries and the length of time she experienced pain and discomfort, we do not find that the trial judge's general damage award to plaintiff of $8,000 was an abuse of his wide discretion.
Award for Lost Wages
Plaintiff was employed on October 21, 1980 by Kansas City Southern Railway Company ("KCS") as a trainee. Her first day of compensated service for this employer was on October 28, 1980. Hired as a yard clerk, she was paid $58.30 per day.
At the trial there was testimony from two KCS supervisory employees that a decision was made on October 30, 1980 to terminate plaintiff's employment because of her unacceptable performance on the job. However, because of her accident and subsequent hospitalization, this information was not communicated to plaintiff until November 3, 1980. Considering this evidence, the trial judge made the following finding of fact:

*530 "... [t]he apparent satisfactory work record of plaintiff, the knowledge on the part of the supervisors of plaintiff's hospitalization, and the fact of her notification several days later lead this court to infer that it is more probable than not that the decision to terminate the plaintiff was made subsequent to her hospitalization and not prior thereto. This conclusion is also based on the fact that plaintiff suffered an off the job injury which would create future work problems. Regardless, the fact that the plaintiff was employed at the time of, or immediately prior to, the accident convinces this court that she most probably would have continued this or obtained other employment in the immediate future but for the accident and resulting injuries."
Concluding that plaintiff was not physically able to return to work until June 15, 1981, the date of her final discharge by Dr. Dean, the trial judge awarded her lost wages from the date of the accident until the date of her release from medical care, computed on the basis of her daily compensation by KCS.
Defendants argue that plaintiff lost no wages because her employment with KCS had been terminated at the time of her accident and, further, that her brief incapacity ended on January 7, 1981, when Dr. Dean released her to return to work.
The record supports the trial judge's determination that plaintiff proved she probably would have been employed, either by KCS or some other employer, during the period of her disability. See South Central Bell Telephone Co. v. Branch, 360 So.2d 271 (La.App. 4th Cir. 1978). We also agree with the trial judge that, since the January 7, 1981 medical release to return to work was a qualified or conditional release, plaintiff was not able, as a practical matter, to resume employment until her final discharge from medical care by Dr. Dean on June 15, 1981.
Plaintiff complains that she should have received an additional award for diminution of earning capacity. However, there simply was no evidence to support such an award. Dr. Dean explained that the 5% residual disability he assigned to plaintiff was not a functional one. The trial judge correctly denied this claim.
Miscellaneous Issues
Plaintiff contends that the trial judge erred in failing to assess the defendant insurance company with statutory penalties and attorney fees for arbitrarily refusing to pay, upon demand, medical expenses due plaintiff under the insurance policy covering the convenience store premises.
The trial judge noted that the letter sent by plaintiff's counsel merely advised Digilormo of the writer's representation of plaintiff and requested contact from defendant's attorney. The statutory penalties stipulated by La.R.S. 22:657 and 658 apply only when the insurer fails to pay undisputed claims within 60 days of demand. To qualify as a "demand" the communication must fully inform the insurer of the plaintiff's intention to claim payment under the policy for a specified amount. Hut of La., Inc. v. Zurich Ins. Co., 372 So.2d 687 (La. App. 1st Cir. 1979).
This claim for statutory penalties and attorney fees was properly denied by the trial judge.
Plaintiff further argues that the trial judge committed error in categorizing her medical bill for the visit to Dr. Burt as litigation expense and refusing to include it in her award. We agree with the trial judge. Plaintiff consulted Dr. Burt only once, three weeks before the trial, and received no treatment from him. An examination and report made in preparation for litigation are not items of medical expenses for which recovery may be had. Warren v. Yellow Cab Co., 136 So.2d 319 (La.App. 2d Cir. 1961).
Conclusion
For the reasons set forth, we affirm the judgment of the district court. Costs of appeal are assessed equally to plaintiff and defendants.
NOTES
[1] La. Civil Code Art. 2323, amended effective August 1, 1980 to make the law of comparative negligence applicable in this state, provides:

When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.