457 So.2d 722 (1984)
Josephine Marie PRICE, Individually and as Natural Tutrix of the minors, Darrell Ray Price, Demetrius Ray Price, Jesse Lee Price, Jr., Sheila Ann Price and Alvania Ann Price, Plaintiff-Appellant,
v.
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY, Louie M. Boleware, American Employers Insurance Co., et al., Defendants-Appellees.
No. 16208-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Writs Denied January 7, 1985.
*723 Blackwell, Chambliss, Hobbs & Henry by Sam O. Henry, III, West Monroe, for plaintiff-appellant.
Cotton, Bolton & Hoychick by John Hoychick, Jr., Rayville, for defendants-appellees Louie M. Boleware and Louisiana Farm Bureau Mut. Ins. Co.
McLeod, Swearingen, Verlander & Dollar by Richard A. Bailly, Monroe, for defendant-appellee American Employers Ins. Co.
*724 Before PRICE, HALL, MARVIN and NORRIS, JJ., and McCLENDON, J. Pro Tem.
McCLENDON, Judge Pro Tem.
In this wrongful death and survival action plaintiff appealed a trial court decision granting a judgment notwithstanding the verdict which maintained the jury's findings of negligence on the part of the defendant and the decedent and increased the jury's damage award.
On the original hearing one judge dissented from a modification of the trial court and a five judge panel was convened. La. Constitution, Art. 5, § 8(B). For the reasons hereinafter set forth, we amend the judgment in part and recast the damages.
Facts
On the evening of November 14, 1980, at approximately 6:00 P.M., the decedent, Jesse Price, was driving a pickup truck, with the headlights on, in a westerly direction on Parish Line Road in West Carroll Parish. Price was in the process of returning to Ouachita Parish after working as a utility crew foreman in East Carroll Parish.
Parish Line Road is a blacktop, two-lane road, approximately 19.5 feet wide, with no surface markings and narrow grass shoulders. The road surface was dry. However, it had been raining that day and the sky was overcast.
The defendant, Louie Mac Boleware, was driving his John Deere 4620 tractor in an easterly direction on Parish Line Road, with his tractor lights on. The tractor was pulling a tractor loaded with seven bales of hay which Boleware baled that day and was hauling to his livestock. His nephew, Rory Boleware, was following him in a pickup truck with the emergency flashers on since the trailer did not have tail lights.
As these vehicles met, the left or driver's side of the pickup truck bumper, at approximately the headlight, collided with the left outside dual wheel of the tractor, causing the pickup truck to turn over, trapping Price inside. The tractor proceeded forward for 30 feet after impact, then swept to the north, coming to rest with its front wheels in the ditch and the trailer blocking the entire road.
Price remained conscious and trapped in his vehicle for three to four hours and died later that night after being taken to the hospital. A blood test made at the hospital revealed a blood alcohol content of .22%.
Trial Court Action
Suit was filed by Price's widow on her own behalf and as natural tutrix of her five minor children on October 17, 1981. Named as defendants were Louie Mac Boleware, his insurer, and other defendants who were subsequently dismissed from the case. The defendants requested a jury trial.
Plaintiff alleged in essence that Boleware was negligent in operating the dual wheel tractor in the decedent's lane of travel, and operating it with inadequate lighting and in violation of the Louisiana Highway Regulatory Act.
During the four day trial there was extensive testimony from both expert and lay witnesses. At the conclusion the jury made the following findings in response to the trial judge's interrogatories, after being properly instructed on the law of comparative negligence.
1. Mr. Boleware was guilty of fault or negligence which was the proximate cause of damage to Mr. Price and the plaintiff. The degree of fault was 5%.
2. Jesse Price was also guilty of fault or negligence which was the proximate cause of damages to himself and plaintiff. The degree of that fault was 95%.
3. Damages assessed by the jury as follows:

Special damages $5,000.00
General damages None to plaintiff

After the verdict plaintiff filed a motion for judgment notwithstanding the verdict and, alternatively, for a new trial. Plaintiff also requested the trial court to exercise its authority under Code of Civil Procedure Article 1813 and make an additur of total damages to the amount proven. This motion alleged error in the jury's verdict in *725 that of necessity they must have found that the point of impact was in Jesse Price's lane of travel in order to find any negligence on defendant's part. Having so found, it was alleged that the jury inequitably penalized plaintiff because Jesse Price was determined to have been driving under the influence of alcohol.
Defendant answered the motion with a general denial, but in the alternative requested the trial court to review the jury verdict as to percentage of negligence and find defendant free of negligence.
The trial judge granted plaintiff a judgment notwithstanding the verdict according to then C.C.P. Art. 1810.1, presently Article 1811. He held the jury's apportionment of negligence between the parties was supported by the evidence, therefore he allowed it to stand. However, because the jury's inadequate award of damages was not made in accordance with the evidence or in compliance with the instructions, he made the following award of special and general damages:

Loss of income $100,000.00
Hospital, ambulance and funeral expense 3,705.29
Pain and suffering of decedent prior to
death 2,500.00
General damages to the widow and children
 for loss of consortium, love and
 companionship, etc. To Josephine Price,
 widow, $50,000.00. To each of 5 children
 $8,000 or total of $40,000.00. $ 90,000.00
 ___________
 $196,205.29

In so doing he held that a trial court, in the exercise of its authority under a judgment notwithstanding the verdict, could correct an obvious error in the jury damage award without having to resort to an additur or to a new trial.
In making this finding the trial judge rejected the then unreported Third Circuit case of Rougeau v. Commercial Union, 432 So.2d 1162 (La.App. 3rd Cir.1983). Rougeau held that judgment notwithstanding the verdict was not intended to supplant the procedure for additur and remittitur of judgments in jury cases, therefore the trial courts must utilize additur, remittitur, or new trial as the procedural vehicle to adjust damages.
Defendant was cast for all court costs.
From this judgment plaintiff appealed, contending the trial court erred in failing to re-assess the percentage of fault and erred in granting a judgment notwithstanding the verdict in lieu of an additur or a new trial on the issue of damages.
In answering the appeal, defendant argues that the only errors made by the lower court were attributing negligence to defendant Boleware and casting the defendant for all court costs.
Procedural Issues
At the time the trial court was presented with the motion for judgment notwithstanding the verdict, additur and, alternatively, for a new trial, it had to resolve the question of which procedural device or devices to utilize. This was necessary because plaintiff included two primary complaints concerning the jury verdict, viz:
1. The jury erred in the percentage of fault attributed to the parties involved in the collision.
2. The jury erred in the damages awarded.
The trial court concluded that both of these issues could be considered under the motion for judgment notwithstanding the verdict despite the clear wording of C.C.P. 1813 dealing with additur, and the contrary holding in Rougeau, supra.
After the trial court decision the Fourth Circuit, in the case of Cooley v. Allstate Ins. Co., 443 So.2d 739 (La.App. 4th Cir. 1984), followed Rougeau in holding that additur or remittitur was the proper procedural device for amending damage awards, not judgment notwithstanding the verdict.
When this appeal was lodged in this court and was first considered, we concluded that under the rationale of Rougeau and Cooley the trial court erred in considering both the issue of liability and the issue of damages under the motion for judgment notwithstanding the verdict.
Since that time the Louisiana legislature amended C.C.P. Art. 1811 and added paragraph "F" which clearly gives authority for *726 a trial court to consider both issues under such motion. According to the editorial comment, paragraph "F" was added for the specific purpose of overruling the Rougeau case, supra.[1]
This legislative enactment being procedural in nature, we apply it retroactively and find that procedurally the trial court properly considered both issues.
Having thus ruled on the procedural action taken, we now consider the substantive questions before this court.
Percentage of Fault
Unfortunately, a reviewing court never has the benefit of the factual basis for a jury verdict. To add to that problem, the trial court in the present case did not favor us with any factual basis in its opinion for the conclusion that:
"A review of the record in this case shows that while there is evidence to support the jury's verdict in fixing the percentage of fault...."
He did state in the paragraph immediately preceding the above quote that:
"... A great deal of evidence dealt with the way the accident happened which pertained to the negligence or lack of negligence on the part of the parties involved...."
With no other factual basis alluded to, the trial court entered a judgment notwithstanding the verdict allowing the 95%/5% jury verdict to stand.
Our review of the evidence presented to the jury and heard by the trial judge convinces us that both were correct in finding the defendant negligent but manifestly erroneous in their assessment of the degree of fault.
There were two completely different versions of the position of defendant Boleware's tractor at the time of impact.
Defendant Boleware, his nephew Rory, and his expert in accident reconstruction, Colonel Andre, all placed the Boleware tractor as being stopped entirely in its right lane of the two-lane highway, with the right dual wheels far over towards the low part of the south (right) ditch.
State trooper Cannon and plaintiff's expert in accident reconstruction, Ray Herd, were just as positive that the point of impact was over the center of said two-lane blacktop highway, with the left outer dual wheel of the tractor being five inches across the center and moving forward at the time of impact.
If the jury believed that the tractor was stopped entirely on its side of the center of the unmarked highway, they could only have concluded that defendant Boleware was free from negligence and Jesse Price's fault in driving across the center of the highway and striking the tractor was the sole and proximate cause of the accident.
If they had so concluded, they had been instructed to cease their deliberations and find for the defendant.
Two other possibilities were presented to justify the jury's conclusion. One was sympathy for the plaintiff members of decedent Jesse Price's family.
We can conceive of a jury letting its sympathy for the widow and five children cause it to ignore the clear instructions in the trial judge's charge that:
"... As jurors you are expected to make an impartial deliberation and reach an impartial conclusion based upon all of the evidence presented in the case and nothing else. This means you must deliberate on the case without regard to sympathy, prejudice or passion, for or against any party to the suit...."
However, we have much difficulty with the concept of the trial judge, in considering the correctness of the jury's verdict on percentage of fault, allowing himself to be diverted from the evidence by sympathy for these surviving family members.
*727 The other suggested basis for the finding of 5% fault on defendant Boleware's part was that he was on the highway with his over-width tractor (12 to 12½ feet) during prohibited hours (30 minutes before sundown and 30 minutes after sunrise) in violation of R.S. 32:385 which states in part:
Farm vehicles may use any public highways ... during the period from thirty minutes after sunrise until thirty minutes before sunset without obtaining a special permit....
We consider the second suggested possibility only because it was mentioned for the first time in both parties' briefs to this court. We know the jury did not consider it because it was not included in the charge to the jury. We know it was not considered by the trial judge in his ruling on the motion for judgment notwithstanding the verdict because he did not mention it in his opinion.
Had violation of this regulatory statute been at issue it would have to be conceded that the statute placed a duty on defendant Boleware to refrain from operating his tractor on the highway during the prohibited hours without first obtaining a permit. The crucial question then to be answered to determine negligence would have been whether this duty was meant to encompass the risk that an intoxicated driver would cross the center line of the two-lane highway and strike a stationary tractor in the opposite or oncoming lane of travel. We think that, clearly, this statute was not intended to prevent this type of risk and certainly the securing of a permit would not lessen such a risk in any manner.
Therefore, we must conclude that neither sympathy nor the violation of the above regulatory statute motivated the trial court to sustain the jury's percentage finding of fault in his judgment notwithstanding the verdict.
Further, we must know that had the trial judge accepted defendant's version of the accident he would have had no alternative but to conclude that Jesse Price had in some manner created a situation which defendant Boleware had no duty to protect against. If this were so, defendant would have been found free of negligence and the question of comparative negligence would not need to be considered. Civil Code Art. 2323; Dunn v. Bolden, 372 So.2d 785 (La. App. 2d Cir.1979); 40 La.L.Rev. 319, "Comparative Negligence and the Duty/Risk Analysis."
We will not burden this opinion with a lengthy recitation of evidence. It is sufficient to say that a careful examination of this record reveals that the factual findings of Trooper Cannon, the first law enforcement officer on the scene, and the findings of Ray Herd, the accident reconstruction expert of considerable experience, whose investigation was begun very shortly after the accident, are most persuasive in fixing the point of impact across the center line, in the decedent's lane of travel.
This is particularly so in view of defendant's insistence that the tractor was stopped completely at the time of impact. However, the physical facts show that when struck on the left outside dual wheel with sufficient force to sever the steel axle and wheel, the tractor, with the 40 foot hay-laden trailer still attached, weighing a calculated 12 to 13 tons, was propelled forward 30 feetnot backward, eventually entering the north ditch before coming to a stop.
The other glaring inconsistency in the defendant's version of the accident is the total absence of any tracks in the soft dirt of the ditch where defendant Boleware testified he had pulled his tractor to a stop immediately prior to the collision. It is absolutely incredible that the heavy piece of equipment could be driven onto the soft shoulder and Trooper Cannon could not find any evidence of tracks the night of the accident or the following day during his investigation.
We find, based on the evidence presented, that the trial court concluded as a matter of fact that the defendant was negligent, i.e., he was operating his tractor with the left dual wheel over the center line. Reasonable factual conclusions of the *728 trier of fact should not be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
The trial court also properly concluded that Jesse Price was not free from fault in driving his pickup truck on the highway while under the influence of intoxicants. However, we feel that the trial judge was clearly wrong in apportioning 95% of the negligence to decedent Price, and we reduce the decedent's percentage of fault to 65%. See Abraham v. Hanover Ins. Co., 420 So.2d 526 (La.App. 2d Cir. 1982); Sampy v. Roy Young, Inc., 425 So.2d 284 (La.App. 3rd Cir.1982).
Attributing 95% of the negligence to decedent virtually ignores the critical statutory duty Boleware had to operate his tractor on the right side of the road. R.S. 32:71. This duty extended to all drivers on the road, whether they be attentive, inattentive or intoxicated. This was especially so considering it was dusk, making the tractor's dual wheels, which were outside and below the lights, difficult to see.
Assume it was an attentive driver, obeying all traffic laws, who was unable to discern the tractor tire in his lane of travel, thereby colliding with it. Under those facts we would have no problem finding the defendant 100% negligent. However, since the decedent's intoxication obviously contributed to his failure to observe the tractor wheel in time to avoid it, we apportion his percentage of negligence at 65% and that of defendant Boleware at 35%.
Turning to the second question presented by this appeal, we consider the jury's damage award, as amended by the trial court, and will review the award according to the mandate of Coco v. Winston, 341 So.2d 332 (La.1976).
Special Damages
We agree with the trial court that the jury's $5,000 special damage award was a manifest abuse of its discretion. Further, we find that in attempting to correct the jury's error, the trial court failed to give proper consideration to the uncontroverted evidence presented during the trial.
The 34 year old decedent was employed as a foreman by Mid-South Tank and Utilities, Inc. His rate of pay was $5.50 per hour. Prior to his death he was earning $14,500 to $15,000 per year.
Dr. Charles Bettinger, a business professor at Northeast Louisiana University and a statistician and economic consultant, testified on behalf of plaintiff as an expert in calculating lost income. Dr. Bettinger was accepted as an expert without question or objection by the defendant and by the court.
Due to the yearly income of the decedent, Dr. Bettinger determined he earned substantial overtime pay per year. The decedent's work life expectancy was 23.1 years. Based on this work life expectancy and the base pay of $5.50 per hour, Dr. Bettinger calculated plaintiff's lost past and future income was $304,194. He admitted this figure was extremely conservative because, among other factors, no overtime pay was included in his computations.
Defendant did not seriously dispute Dr. Bettinger's calculations or his methods and they produced no expert testimony to refute the figures presented.
The ambulance, hospital and funeral expenses totaled $3,705.29.
We raise the award of special damages to the lowest reasonable amount, which is $250,000 for lost past and future income and $3,705.29 for ambulance, hospital and funeral expenses, a total of $253,705.29.
General Damages
The trial court awarded only $2,500 for decedent's pain and suffering. In light of the facts established, we find that this amount was significantly inadequate.
After the accident decedent remained trapped inside the overturned pickup truck for three hours or longer. He was conscious and in substantial pain and begged the people at the scene to pry him from the wreckage. The accident caused a large amount of fuel to spill in the area, making *729 fire a distinct possibility, and the decedent must have been aware of this possibility.
The decedent was eventually removed from the wreckage by a rescue team and taken by ambulance to Delhi Clinic where he survived for a few hours, conscious and in substantial pain. He died that night at the clinic.
Considering the extreme mental and physical pain the decedent endured in the last hours of his life, we find the lowest reasonable amount that could be awarded for pain and suffering is $7,500.
The decedent and his wife had lived together continuously since their marriage in 1964. The marriage produced five children. The family members testified that they enjoyed a close, loving relationship with the decedent. There was no evidence to dispute the fact that the decedent was a good father and husband who spent much of his free time with the family.
Based on the record evidence, we find that the award of $50,000 by the trial court to the widow was appropriate, but that the trial court's award of $8,000 to each of the five children should be increased to $25,000 each as the lowest reasonable amount for loss of love and affection.
Court Costs
The trial court assessed all court costs to defendant. We find that court costs should reflect the percentage of negligence attributed to each party. Therefore, plaintiff-appellant is assessed 65% and defendant-appellee 35% of the court costs.
Decree
For the reasons set forth above, the judgment notwithstanding the verdict is amended to: (1) apportion the degree of negligence at 65% to the decedent and 35% to the defendant; and (2) increase the award in favor of plaintiff to a total of $436,205.29, itemized in the manner set forth above, subject to a 65% reduction for the decedent's degree of negligence, together with legal interest from date of judicial demand until paid. Plaintiff is cast for 65% of the trial court costs. Costs of appeal are assessed to the defendant.
MARVIN, J., dissents and assigns written reasons.
MARVIN, Judge, dissenting.
I dissent because I believe that an appellate court should not substitute its opinion on factual issues for the opinion of a jury that is supported by substantial and believable evidence, especially where opinions given by experts differ as to the cause of a two vehicle accident.
The majority finds the jury and the trial judge "manifestly erroneous" because there "were two completely different versions of the position of Boleware's tractor at the time of impact" and because of "glaring inconsistencies" in Boleware's version of the accident. These are purely factual and not legal questions which are solely the province of the finder of fact. Duty is not an issue in this case.
Boleware, the tractor driver, testified. His nephew, who was following him in a pickup truck, corroborated his testimony. Also generally corroborating Boleware were an expert in accident reconstruction and an expert in the effect of blood alcohol on the body and mind, who gave opinion evidence.
Plaintiff's conflicting version was presented by testimony of the state trooper, who was called to investigate the accident after it occurred, and of an accident reconstruction expert, whose testimony was found "most persuasive" by the majority but not by the jury and the trial judge.
Each traffic reconstruction expert "explained" the basis of his respective opinion and why the other expert opinion was incorrect. Each expert was examined and cross-examined regarding the forces involved, and the effect of "lockout rearend" and "positive traction" of the tractor. Plaintiffs' expert opined that the tractor was moving and that its left rear wheel extended 6" across the projected center line of the roadway, or about 10½ feet into the *730 roadway when impact occurred. Boleware's expert opined that the left rear wheel of the tractor extended only about 1½ feet into the roadway. Both agreed that Price was driving not more than 50 mph or within the posted speed limit. This testimony presented issues of fact to the jury. Where on the highway did the impact occur? Was the tractor moving?
The majority also finds it "absolutely incredible" that the trooper could not, or did not, find evidence of tracks of the heavy tractor on the narrow shoulder sloping into the ditch adjacent to the highway. Boleware testified that on the night of the accident he saw the tracks the right rear wheels of his tractor made in the slope of the ditch and that the trooper did not talk to him or inquire about tracks. This testimony presented a factual credibility issue relative to the position of the tractor and the conduct of the tractor driver. Were there tracks? Which witness was to be believed?
Boleware testified that he saw the lights of Price's pickup approaching him, weaving from side to side on the roadway. The road was straight and level for about ¾ mile. Boleware said he slowed, steered to his right as far as he could, and stopped with the right wheels on the slope of the ditch and with the left wheels extending about two feet into the roadway. The tractor was left running. Boleware said he flashed his lights at the approaching truck by placing his hands on and off the light that was affixed to the inside of each rear wheel cover separated by the tractor seat. He said the truck continued weaving and collided with the left rear wheels, causing the tractor to spin around and across the highway. Boleware's nephew corroborated this version.
The blood alcohol expert testified that a driver with .22 grams percent blood alcohol "most likely" would be weaving on the roadway. About two hours after the accident, Price's blood alcohol tested that amount.
The jury was not interrogated whether the left wheel extended 1 ½ feet or 10 ½ feet into the roadway or whether the tractor was moving at the time of impact. The jury was interrogated whether each driver was negligent, and, if so, to what degree.
We cannot speculate about what the jury "must have found" regarding the location of the left rear tractor wheel or wheels. We also cannot speculate whether the $5,000 award was five percent of $100,000 or whether it was rendered out of sympathy for Price's family. Even should we attempt to introduce sworn testimony of each juror why fault was allocated as it was and how the $5,000 award was reached, the jurors, after verdict, could not be heard. Such an attempt was made and properly refused in Conner v. Florida Farm Bureau Cas. Ins., 446 So.2d 383 (La.App. 3d Cir.1984).
Except for polling and for extreme irregularities such as jury tampering, an inquiry into the method or the thought processes by which a jury reaches a verdict is not allowed. See authorities cited in Conner, at p. 388.
One fact that is apparently not disputed by the experts is that Price was approaching the tractor at about 50 mph and was weaving on the road because of his drunken condition. Logic, reason, and experience do not allow me to conclude that Boleware, in the face of the obvious danger, continued driving the tractor at or near the center of the roadway as plaintiffs' expert opined. Nonetheless, and regardless of the position of the wheels of the tractor, the jury could have found Price negligent to a very great degree because there was room on the roadway to allow Price to pass the tractor and because Price was .22 grams percent blood alcohol, very intoxicated. The roadway was about 20 feet wide. Price's truck was 6½ feet wide. The tractor was not 12½ feet wide as the majority finds, but 11½ feet wide.
Similarly, the jury could have found Boleware negligent to a much lesser degree, wherever the rear tractor wheels were located. The lights of the Boleware tractor were narrowly separated on the inside of each wheel cover and did not change beams *731 from high to low as do lights on conventional motor vehicles. The wheels were much wider than the lights. It was contended that these lights were not reasonable safe. Photographs of the tractor and the scene were shown the jury.
"Duty" under the reasonable man standard of C.C. Art. 2315 or under LRS Title 32 was not an issue. Where the inquiry is not duty, but the reasonableness of the conduct of each driver and a comparison of that conduct, the issues are purely factual inquiries and are a prerogative of the jury. We are required to review the evidence in the light which most favorably supports the judgment and to determine from this review whether the trier of fact was clearly wrong or manifestly erroneous in its judgment. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Abraham v. Hanover Ins. Co., 420 So.2d 526 (La.App. 2d Cir.1982); Reck v. Stevens, 373 So.2d 498 (La.1979).
A jury's allocation of fault under the comparative negligence law (when contributory negligence is applicable under La. C.C. Art. 2323) is a factual finding which the appellate courts will not disturb unless, for well articulated reasons, that finding is found clearly wrong, manifestly erroneous. Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3d Cir.1984); Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3d Cir.1984); Varnado v. Continental, 446 So.2d 1343 (La.App. 1st Cir. 1984); Abraham v. Hanover, supra. See also Swartz, Comparative Negligence, §§ 18.1, 18.5, and Symposium, Comparative Negligence in Louisiana, 40 La.L.R. 289 (1980).
The trier of fact's findings as to the percentage of fault is factual, just as a finding of contributory negligence under the old law was factual. The finding of negligence presents a question of law only when the inquiry or the [duty-risk] analysis concerns the extent or scope of an actor's duty. Varnado, supra at p. 1345, Triangle Trucking Co., supra, at p. 642.
The proper determination and apportionment of fault is not based on the comparison of legal causation, but on the degree of negligence attributable to the parties involved. Triangle Trucking Co., supra, at p. 641, citing Symposium, supra, 40 La.L.R. at p. 343. Whether a fact-finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies. Thomas, supra, at p. 1158. A jury's apportionment of 95-5 percent under the comparative negligence law of Louisiana has been upheld. Fritscher v. Chateau Golf & Country Club, 453 So.2d 964 (La.App. 5th Cir.1984). Compare Swartz, cited supra. See also Annotation, Comparative Negligence Doctrine, 78 ALR 3d 339.
An appellate court should not disturb the fact finder's prerogative to weigh the credibility of witnesses, resolve conflicts and inconsistencies (however "glaring" the appellate court finds those inconsistencies), and apportion fault. Thomas, supra.
The fact that the majority labels the opinion testimony of the state trooper and of plaintiffs' accident reconstruction expert as "very persuasive," does not make the jury's verdict manifestly erroneous, clearly wrong. The jury could have believed the conflicting opinion evidence and the testimony of Boleware and his nephew who were directly or indirectly involved in the accident. If the testimony of plaintiffs' expert and state trooper is substantial, the testimony of defendants' experts and of the Bolewares is equally substantial. In my opinion, the majority has not demonstrated how the jury's verdict was not based on substantial, believable, factual evidence. I believe the majority commits error in concluding otherwise.
Professor Swartz illustrates and explains how physical causation can be scientifically apportioned, while fault cannot. His illustration is an intoxicated motorcyclist who speeds at 80 mph, loses control and crosses lanes, colliding with a truck who is speeding 65 mph. In terms of physical causation, perhaps an expert could testify that the truck supplied 95 percent of the force that killed the motorcyclist, according to Swartz. Nevertheless, Swartz continues, the jury's inquiry under comparative negligence *732 does not focus on physical causation, but on culpability.
"Different juries and ... jurors will often give dissimilar answers. Some might say that the motorcyclist ... was fifty percent at fault, others sixty percent, even ninety percent. Nevertheless, in a particular trial, ... jurors ... must agree on a fixed percentage of fault attributable to the plaintiff.... [J]urors are not legally permitted to average out their respective guesses as to plaintiff's fault and agree to call that their verdict." §§ 17.1 at pp. 276-277.
Swartz further emphasizes that courts in comparative negligence states rarely disturb the juries' apportionment of negligence between parties. § 18.1, p. 295.
I also dissent in part relative to this court's increasing the damages awarded by the trial court who saw and observed all witnesses. The trial court has much discretion in awarding damages and does not have to accept uncontroverted evidence at face value. An expert witness calculated the value of decedent's income at more than $300,000 after discounting and without considering overtime pay. The trial court awarded $100,000, which is somewhat low. Where we find an award so low as to constitute an abuse of discretion our authority is to raise to the lowest award we would affirm. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). I would raise this part of the award only to $150,000.
Thus far, Louisiana appellate courts have consistently followed the principle that the trier of fact's apportionment of fault will not be disturbed where that apportionment is supported by substantial evidence. I respectfully submit that the majority opinion is in error in failing to follow this consistent holding. The trial judge, who saw and heard the witnesses, found, in post-verdict motions, that the jury verdict allocating fault was supported by substantial evidence. I would agree and would affirm the judgment on this point.
NOTES
[1] Act 40 of 1984.

* * * * * *
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.