521 So.2d 1200 (1988)
John HARDIN, et al, Appellants,
v.
MUNCHIES FOOD STORE, et al, Appellees.
No. 19386-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Writ Denied April 29, 1988.
Joseph W. Greenwald, Shreveport, for appellants Judy Tabor.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for appellees Safeco Ins. Co. of America.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
This appeal arises from a suit for damages sustained as a result of personal injuries. The plaintiff-appellant is Judy Tabor and the defendant-appellee is Safeco Insurance Company of America. The jury awarded the plaintiff $55,141.05 in general and special damages. The trial court granted defendant's motion for remittitur and reduced plaintiff's award to $15,000.00. The plaintiff agreed to the remittitur in order to avoid a new trial which the trial judge would have granted if she had declined to accept the remittitur. The plaintiff now appeals the reformed judgment urging the award is inadequate. Finding the reduction to be an abuse of the trial court's discretion, we amend to increase the amount of general damages.
Plaintiff urges two assignments of error on appeal which present two issues to be resolved:
(1) Should the jury verdict be afforded appellate review, and
(2) Was the trial court's evaluation of plaintiff's damages at $15,000.00 an abuse of discretion.
*1201 The plaintiff contends the judgment rendered pursuant to the jury verdict should be reviewed by us pursuant to judgment notwithstanding the verdict (hereinafter referred to as JNOV) standards and found by those standards not excessive and then substituted for the judgment reformed by the remittitur. She alternatively contends the reduction in her damage award represented by the reformed judgment was an abuse of discretion by the trial judge and the damage award in the reformed judgment should be increased.

FACTS
Plaintiff and her boyfriend John Hardin filed suit for damages sustained as a result of personal injuries caused by an attack upon them which occurred outside Munchies Food Store in the early morning hours of May 10, 1984. The jury returned a verdict in favor of both plaintiffs.[1] The trial judge granted defendant's motion for JNOV with respect to the plaintiff and dismissed her suit. She appealed the JNOV and in an opinion reported at 510 So.2d 33 this court reversed the JNOV on the issue of liability and remanded the case to the trial court for a determination on Safeco's motion for remittitur or in the alternative new trial in accordance with LSA-C.C.P. art. 1811(C)(1).[2] The plaintiff now appeals the judgment of remittitur ordered by the trial court upon remand. The actual events of the attack wherein plaintiff sustained her damages are extensively set forth in our earlier reported opinion and will be only briefly recounted here.
Judy Tabor and her boyfriend drove to the Munchies convenience store where Judy remained in the truck while Hardin went inside to buy a pack of cigarettes. The assailant, Oliver King, approached the truck in which Judy sat and made offensive sexual remarks to her through the window. When Hardin returned to the truck King hit him in the head with a lead pipe causing him to fall to the ground where he lay unconscious throughout the attack. Judy exited the truck and attempted to assist Hardin but King turned on her with a knife. She fled back to the truck pursued by King. When she entered the truck she struck her face on the rearview mirror. King repeatedly tried to stab Judy through the partially opened window but she managed to avoid the knife. King retreated from the truck only to begin a savage beating of the unconscious Hardin. Judy, who screamed hysterically throughout the ordeal, futilely sought the assistance of two onlookers, one of which was an off-duty Munchies employee, who were standing in front of the store watching the attack. These on-lookers continued to simply stare and do nothing in the face of Judy's repeated pleas to call the police. She then attempted to run over King with the truck but stopped when he threatened to cut open Hardin with the knife. The police were called by a Munchies employee only after the attack had been going on twenty to twenty-five minutes.

ISSUE # 1: SCOPE OF REVIEW
The plaintiff contends that we should apply the JNOV test to the review of the judgment rendered pursuant to the jury award and find that reasonable men could not disagree with the amount awarded by the jury. He then contends the judgment rendered pursuant to the jury award should be substituted for the judgment appealed. We note a JNOV may be granted on the issue of liability or on the issue of damages or on both issues. LSA-C.C.P. art. 1811(F). Additur or remittitur is not the only procedural device for amending damage awards. The trial court may grant the JNOV and correct an error in the jury damage award by reducing or *1202 increasing the award as the particular case may require. Robertson v. Penn, 472 So. 2d 927 (La.App. 1st Cir.1985); writ den., 476 So.2d 353 (La.1985); Price v. Louisiana Farm Bureau Mut. Ins. Co., 457 So. 2d 722 (La.App. 2d Cir.1984); writ den., 462 So.2d 205 (La.1985). A JNOV should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions. Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969); Robertson v. Penn, supra; Hardin v. Munchies Food Store, supra. "Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages, it should have the authority to grant the appropriate judgment notwithstanding the verdict". LSA-C.C.P. art. 1811, Official Comment.
In the instant case we do not review the reasonableness of the jury's award because the record does not contain a JNOV on the issue of damages. Appeal or review lies only from the judgment. Wright v. Ocean Drilling and Exploration Co., 461 So.2d 1084 (La.App. 4th Cir.1984); Hardin, supra. The judgment plaintiff has appealed is the judgment reformed in accordance with the remittitur, as authorized by LSA-C.C.P. art. 2083.[3] When the judgment reformed by additur or remittitur is challenged on appeal, appellate review is limited to the reformed judgment. Miller v. Chicago Ins. Co., 320 So.2d 134 (La.1975); Karl v. Amoco Production Co., 507 So.2d 263 (La.App. 3d Cir.1987); writ den., 512 So.2d 461 (La.1987)[4]. Our review of the quantum is limited to the reformed judgment which is the result of a reduction of the judgment rendered pursuant to the jury award by the remittitur to which plaintiff acquiesced, albeit under protest.

ISSUE # 2: QUANTUM
We now address the central issue of general damages. The appellate court will not change an award of general damages unless it is first determined the trial judge has abused his great discretion. LSA-C.C. art. 2324.1; Reck v. Stevens, 373 So.2d 498 (La.1979); Tyler v. Richardson, 476 So.2d 899 (La.App. 2d Cir.1985), writ den., 478 So.2d 907 (La.1985). We are guided by the supreme court's language in Reck v. Stevens, supra: "Thus, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of facts' much discretion. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review for articulated reason be considered excessive or insufficient." A scale of prior awards will be reviewed only if it is first determined that the instant award is an abuse of discretion. Reck, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
In the instant case the trial judge ordered a remittitur, accepted by the plaintiff under protest, which reduced plaintiff's award to $15,000.00. Plaintiff's evidence established past and future medical expenses totaling $13,531.05, which results in the award for general damages being the sum of $1,468.95. The plaintiff contends this general damage award is grossly inadequate to compensate her for the pain and *1203 suffering and mental anguish which she endured following the attack.
The defendant contends the plaintiff sustained an aggravation of a pre-existing temporal mandibular joint (hereinafter referred to as TMJ) condition which lasted for a maximum of two months after the incident occurred for which the general damage award is adequate. Defendant further argues the plaintiff is not entitled to recover damages for mental anguish caused by witnessing an injury to another person, in this case her boyfriend John Hardin, and correctly cites Bloodworth v. Carroll, 455 So.2d 1197 (La.App. 2d Cir. 1984); rev'd on other grounds, 463 So.2d 1313 (La.1985), and citations therein in support of this contention.
The trial judge in his written reasons for granting the defendant's motion for JNOV, reversed on appeal in Hardin, supra, stated:
The Court believes that the evidence in this case is insufficient to sustain the jury award in excess of $55,000 in favor of Tabor. The evidence indicates that she probably suffered an aggravation of a pre-existing TMJ problem, which required medical attention. All of the future medical expenses estimated by Drs. Gamble and Hollembeak were to correct the basic cause of Tabor's TMJ problems existing prior to the incident at Munchies as a result of numerous missing teeth. In addition, Tabor suffered from mental and emotional damage as a result of being assaulted by Oliver King, although the evidence shows that he never actually touched her. She was seen by Dr. Paul Ware and Claudia Harris, a social worker, for emotional problems as a result of the incident. From the testimony of Tabor, Dr. Ware and Mrs. Harris, some of these problems were as a result of seeing Hardin being battered, not merely as a result of the assault on her by King.
The trial judge further noted had he not granted the JNOV he would have ordered a remittitur to reduce the jury verdict to the sum of $15,000.00, inclusive of plaintiff's general damages and past and future medical expenses.
Although we agree the plaintiff is not entitled to recover damages for witnessing the beating to Hardin, Bloodworth, supra, we cannot conclude based upon the facts elicited from the record that the general damage award of $1,468.95 is adequate to compensate the plaintiff for her past and future pain and suffering and the mental anguish she sustained caused by her fear for her own safety. We therefore find the general award to be an abuse of the trial court's great discretion for the following reasons.

PLAINTIFF'S PHYSICAL INJURY
Plaintiff testified she had experienced clicking and popping in her jaw some three to four months prior to the attack, having yawned and "My jaw kind of popped." She testified that following this incident she had not experienced any trouble or pain with her jaw, until after the attack following which she could not fully open her mouth, and she had pain in her face and severe headaches.
The record reveals extensive medical testimony on plaintiff's physical injury. Dr. Jack Gamble, a specialist in oral and maxillofacial surgery, and Dr. Perry Hollembeak, a general dentist with special interest in TMJ, both treated plaintiff's physical injury. Dr. Gamble testified he first examined Judy on May 30, 1984 after she sought treatment for pain and soreness in the jaw and headaches. He diagnosed Judy as having anterior disc displacement of the right temporal mandibular.
Dr. Gamble stated the plaintiff had the TMJ prior to the attack, but the pain was never as severe as after the incident. Dr. Gamble further stated although plaintiff's TMJ problem was pre-existing, the condition was aggravated by the attack either when she hit her jaw on the rearview mirror or as a result of her prolonged screaming.
The plaintiff underwent corrective surgery in which a splint prepared by Dr. Hollembeak was placed in her mouth to *1204 relieve pressure on the anterior disc. This surgery was performed on June 8, 1984 by Dr. Gamble. Dr. Gamble noted the plaintiff complained of severe pain in her jaw even while coming out of the effects of the anesthesia. Another surgical procedure was performed where a customized implant was inserted into the plaintiff's mouth. This surgery was performed on February 5, 1985.
Dr. Gamble next saw Judy on March 22, 1985, almost eleven months after the attack, at which time she still complained of pain in her jaw and face. The doctor's opinion on that date was that the implant was failing. The implant was surgically removed on August 14, 1985.
Dr. Gamble stated plaintiff's condition at the time of trial required further surgical procedures to facilitate permanent removal of the splint which plaintiff wore after the implant failed.
Dr. Perry Hollembeak in his testimony concurred with Dr. Gamble's assessment of the plaintiff's physical condition. He stated the plaintiff was in severe pain when he first examined her on June 19, 1984. He also reiterated Dr. Gamble's opinion as his own that the displaced disc could have been caused either by the blow she received from hitting the rearview mirror or from her screaming. He testified he last saw the plaintiff in his office on February 13, 1985, although he had kept abreast of her condition through telephone conversations with Dr. Gamble.
Both Dr. Gamble and Dr. Hollembeak recommended future dental treatment to correct the displaced disc as noted by the trial court. However, the record does not support the trial court's statement that her present affliction with TMJ was a result of missing teeth. Dr. Hollembeak testified on direct examination:
Q. Would it be a fair statement to say that Judy had some teeth missing and possibly due to that fact, possibly not a perfect alignment and the disc, but as far as pain goes, before the accident, was asymptomatic, not rendering any symptoms of pain?
A. To the best of my knowledge....
Q. ... Is it more probable than not that she has incurred and is going to incur these bills and resulting procedures because of the trauma?
A. I would have to say that it is definitely the initiating factor and therefore, in my mind, the probability is, that it was the immediate cause of her problem.
We find the record supports plaintiff's assertion of severe pain accompanying the TMJ disfunction and note although her condition is improved, she will incur future pain and suffering resulting from further corrective procedures. The general damage award is grossly inadequate to compensate her for the pain she endured for at least a year following the incident and the pain she is certain to endure resulting from future surgery.

MENTAL PAIN AND ANGUISH
The plaintiff testified she had continued nightmares about the attack. She stated in addition to the nightmares she experienced a paranoia of men, further adding, "I cried a lot. I was scared a lot. I wouldn't go anywhere without a gun. I wouldn't go anywhere by myself."
At the time of trial, almost two years after the attack, plaintiff testified she still had nightmares about the incident, though not as frequently as they then occurred about once a month. She testified her apprehension and fear of men had not abated.
Plaintiff sought the services of Dr. Paul Ware, a local psychiatrist, and his then assistant Claudia Harris, a psychiatric social worker, on May 18, 1984, eight days after the attack. At that time Dr. Ware prescribed Librium, a tranquilizer, to lessen the plaintiff's anxiety. Dr. Ware's diagnosis of the plaintiff's condition was that she suffered from post traumatic stress syndrome.
Claudia Harris testified she first counseled the plaintiff on May 18, 1984 and then saw her again May 21, 1984. Ms. Harris stated the plaintiff displayed a high level of anxiety and also diagnosed post traumatic stress syndrome. The plaintiff at that time *1205 had difficulty eating and sleeping. Ms. Harris noted the plaintiff's phobia of entering crowds of people or convenience stores. Claudia Harris continued to treat the plaintiff throughout 1984 for depression. By June of 1985, more than a year after the incident, the plaintiff was experiencing significant improvement with her mental health, as she began to go out more by herself. Ms. Harris saw the plaintiff three times in 1986, and noted her mental condition had vastly improved. Ms. Harris stated the trial had triggered old memories of the attack and the plaintiff would require an additional four to six months of counseling thereafter.
Both Dr. Ware and Claudia Harris in their testimony acknowledged a portion of plaintiff's emotional distress was caused by plaintiff's observation of the beating received by Hardin. However, both also recognized a significant amount of plaintiff's continued distress and fear directly resulted from the attack on her person by the assailant. In the quoted portion of the trial judge's reasons for judgment he specifically recognized the plaintiff suffered from mental and emotional damage as a result of being assaulted by Oliver King. We find the record fully supports this statement and note plaintiff feared for her safety in public places for many months after the attack. We conclude the general damage award is inadequate to compensate the plaintiff for her own fright and distress emanating from the attack.
Having made the determination the general damage award made by the trial judge was an abuse of his discretion, we now turn to a review of past awards in an effort to determine the lowest amount that was reasonably within the trial court's discretion.
In a recent first circuit case the appellate court reviewed damages awarded to a female plaintiff in her early twenties involved in an automobile accident wherein the plaintiff was diagnosed with TMJ. Friedrichs v. State Farm Fire & Casualty Insurance Company, 496 So.2d 496 (La.App. 1st Cir.1986). The jury awarded $5,000 for past physical pain and suffering, future medical expenses of $5,000, but awarded no future physical pain and suffering. The trial judge let stand the verdict on past pain and suffering and future medical expenses but awarded $25,000 for future pain and suffering pursuant to his exercise of authority in granting the plaintiff's JNOV on this issue. The appellate court affirmed, stating:
"Further, for the jury to award future medical expenses and to award nothing for future pain and suffering was contrary to the result reasonable men should have reached, as future dental treatment was recommended by Drs. Blake and Kreller because there would almost certainly be future pain."
We note in Bloodworth, supra, we affirmed an award of $1,000 to a female victim who sustained no physical injury but was severely frightened by the attempt of her husband to back his car over her. In Mayer v. McNair Transport, Inc., 384 So. 2d 525 (La.App. 2d Cir.1980), this court affirmed an award of $18,500 to an elderly woman who suffered mental trauma after watching her home be engulfed by flames.
In light of the above jurisprudence, we find $20,000.00 to be the lowest general damage award reasonably within the discretion of the trial court for plaintiff's physical and mental damages. Plaintiff is also entitled to $13,531.05 for past and future medical expenses in addition to the general damage award.
We recast the judgment appealed to reflect the additional award and amend paragraph two of the judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Judgment is rendered in favor of Defendant, SAFECO INSURANCE COMPANY OF AMERICA, and against the Plaintiff, JUDY TABOR, granting said Defendant's Motion For Remittitur and thereby reducing Plaintiff's Judgment to the sum of THIRTY-THREE THOUSAND FIVE HUNDRED THIRTY-ONE AND .05/100 ($33,531.05) DOLLARS plus legal interest from date of judicial demand.
*1206 As AMENDED the judgment appealed is AFFIRMED at defendant's cost.
NOTES
[1] John Hardin and the defendant negotiated a settlement and he is not a party to this appeal.
[2] LSA-C.C.P. art. 1811(C)(1) provides:

. . . . .
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
[3] LSA-C.C.P. art. 2083 provides:

An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814.
[4] The jurisprudential rule limiting the scope of appellate review to the reformed judgment in the case of additur or remittitur is well reasoned because of two concerns, namely (1) allowing the appellate court to first review the jury award renders the power of the trial court to grant a new trial (or in the alternative additur or remittitur) meaningless, and (2) the party opposing the additur or remittitur could thereby question on appeal the correctness of the trial court's decision to order a new trial which would be contrary to the rule that a trial court order granting a new trial is an interlocutory judgment which is not reviewable on appeal. Miller v. Chicago Ins. Co., supra; Karl v. Amoco Production Co., supra.