603 So.2d 199 (1992)
Katherine Sue SMITH, Plaintiff-Appellant,
v.
LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, et al., Defendant-Appellee.
No. 90-1306.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
Writ Denied October 9, 1992.
*200 Wm. Henry Sanders, Jena, for plaintiff/appellant.
Cotton, Bolton, Hoychick & Doughty, Terry Doughty, Rayville, for defendant/appellant.
*201 Before YELVERTON and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
This appeal involves a tort suit by Katherine Sue Smith against Louisiana Farm Bureau Casualty Insurance Company for damages she received when she was bitten by a pet raccoon at the residence of Farm Bureau's insured, Lester Fannin.
The jury awarded Smith $35,000 for pain and suffering, past and future, $26,000 for medical expenses, past and future, and $38,000 for loss of wages, past and future. It assigned 60% fault to Farm Bureau's insured, Fannin, and 40% to Smith. Smith's claim for penalties against Farm Bureau for arbitrary and capricious failure to pay her medical expenses was denied. The trial court assessed court costs 60% to Farm Bureau and 40% to Smith.
Farm Bureau appealed contending that the jury's awards for medical expenses and loss of wages were not supported by the evidence.
Smith answered the appeal and filed a separate appeal, contending that: (1) the jury erred in finding her 40% at fault; (2) the jury awarded an insufficient sum for general damages, as well as future loss of wages and loss of earning capacity; and, (3) the trial judge erred in assessing 40% of the court costs to her.

FACTS
Lester Fannin, Smith's brother-in-law, owned a pet raccoon which he kept caged at his home. On May 25, 1988, at approximately 4 p.m. Mrs. Fannin was bitten on the arm by the raccoon as she was trying to return it after cleaning its cage.
After seeking medical attention and returning home, Mrs. Fannin was joined by Smith who helped her prepare supper. While cooking supper, Smith put aside scraps for the raccoon. When Smith was placing the food in the cage, the raccoon attacked her, biting her on the thigh and left ankle.
The facts following Smith's raccoon bite will be elaborated upon in the treatment and analysis of the assignments of error raised.

COMPARATIVE FAULT
Smith contends that the jury was manifestly erroneous in finding her 40% at fault in causing her injuries. We affirm.
Farm Bureau has not contested the jury's finding that it was liable for Smith's injuries. Therefore, we are not called upon to determine whether Farm Bureau's insured was negligent, strictly liable, or absolutely liable.
Likewise, since Smith did not object to the instructions given to the jury on the applicability of comparative fault to the facts of the case, we are not asked to determine whether such instructions were properly given.
Instead, our task on appeal is to determine whether the jury, as instructed by the trial judge, was manifestly erroneous in its determination that Smith was 40% at fault.
In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Uniform Comparative Fault Act, 2(b) as referred to in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). The manifest error/clearly wrong standard applies to an appellate court's review of factors that may influence a fact finder's determination of comparative fault. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
In the case sub judice, the trial court instructed the jury as follows:
"Under the law if the plaintiff is injured as a result partly of her own fault and partly as a result of the fault of the defendant, the claim for damages shall not be defeated, but the amount of damages *202 shall be reduced in proportion to the degree or percentage of fault attributed to the plaintiff. That is to say, if you find the defendant to be at fault, and you also find fault on the part of the plaintiff, the plaintiff's claim shall not be denied, but you shall fix a percentage of fault attributed to the plaintiff. Stated another way, a person suffers injury as a result partly of his own fault and partly of the fault of another person, or persons, the claim for damages shall not be thereby defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of fault attributable to the person suffering the injury. The proper procedure to be followed by the jury in comparing the fault of of the parties and returning a verdict in favor of the plaintiff for a reduced amount based upon that comparison is, first, determine the full amount of all damages sustained by the plaintiff as a proximate result of the accident. Next compare the negligence or fault of the parties by determining what proportions figured in a percentage of plaintiff's own fault which contributed as the approximate cause of all damages suffered by the plaintiff. Then reduce the full amount of plaintiff's damages by subtracting a sum equal to the percentage of the total of all damages which were caused by plaintiff's contributory negligence and return a verdict in favor of the plaintiff for the amount remaining.
* * * * * *
In this case, the standard applicable to the plaintiff's conduct is a requirement that she exercise apt degree of care which we might reasonably expect of a person to exercise for her own safety and protection. On this issue defendants have the burden of proof. In other words, the defendants have the burden of establishing by compliance [sic] of the evidence that the plaintiff in this case fails to conform to the standard and by that failure contributed to her injury. If the defendants convince you of that then you must assign a percentage of negligence to the plaintiff and reduce the award to her accordingly.
* * * * * *
It is the defense of strict liability case under Article 2321 if the damages were caused by ... the fault of the victim, fault of a third (3rd) party, or by a fortuitous event. Fault of the victim means the conduct of the victim was a substantial factor in causing the injury complained of. Victim fault must rise to the level of causing the accident before it will bar recovery. If you find that the plaintiff was contributorily negligent, then you must prove that she is guilty of victim fault and you must reduce the damages in proportion to her fault applying factors which I have given to you in determining comparative fault. You are instructed that wild or undomesticated animals are considered inherently dangerous and anyone who owns one does so at his own peril and is liable for all injuries caused by it. You are instructed that any person has the right to keep a wild animal his right to exhibit it is of necessity judicially recognized. Nevertheless, a person thus privileged assumes obligations of an insured to the public generally and as such, keeps animals at this peril. You are instructed that ... animals ferra natura, a category embracing wild animals, undomesticated animals, such as ... coons, ... are considered to be inherently dangerous and anyone who owns them and harbors them does so at his peril."
Smith argues that there was no causal relationship between her action in taking food to the raccoon's cage and the harm she sustained. She states that she did nothing to precipitate the action of the raccoon, and that the raccoon's actions were solely that of a wild animal. Accordingly, she concludes that since the facts leading up to the raccoon's bite were not disputed, the jury should not have found her at fault.
The record shows that on May 25, 1988, after school was dismissed, Mrs. Fannin, who was keeping Smith's son, Chad, was bitten on the arm by Chico, the pet raccoon being kept by her husband. Earlier *203 the raccoon had gotten out when Mrs. Fannin was cleaning its cage. As a result, Mrs. Fannin sought medical attention and her arm was placed in a sling. Chico remained loose.
Not long after, Smith saw the sling on Mrs. Fannin's arm when she arrived to pick up Chad. The record evidence is undisputed that both Mrs. Fannin and Chad told Smith that the raccoon had bitten Mrs. Fannin, and that the raccoon remained out of its cage.
Smith testified that she remained at Mrs. Fannin's to prepare supper. She stated that she found meatloaf in the refrigerator, and decided to bring the meat out to the cage in hope of luring the loose raccoon. Smith elaborated:
"Lester [her brother-in-law] works in April and May sometimes until after dark and everything. I was afraid he would lose his coon, so I went. And she [Smith's sister] said be careful. And so I got the meatloaf out of the refrigerator, and I went outside. And as I got up almost to the cage to lay it down, her and my son was stooped down on the top of the back door steps. And, ah, she said, `You'd better watch out.' Just about the time I started to lay the meatloaf down, she said, `You'd better watch out, he might like the taste of that human blood.' So I look ... when she said that I looked back, and as she said it, the coon come from around the back of the cage and jumped upon me ... And when he bit me, I was just amazed and astonished, and I pushed ... and when I did he went down my leg and just tore it up."
After carefully reviewing the record, we find that Smith's knowledge of the dangerous propensities of the raccoon was sufficient for the jury to conclude that her actions in voluntarily exposing herself to this danger rose to the level of causing her injury. Smith not only knew that the raccoon had just bitten her sister, but she was warned by her sister and her son of the danger. Nevertheless, Smith voluntarily exposed herself to a known danger. Based on this evidence, we cannot say that the jury's assessment of fault was manifestly erroneous.

PAST AND FUTURE LOSS OF WAGES
Farm Bureau argues in brief that the jury's award of $38,000 for past and future loss of wages was excessive. In her appeal, Smith argues that the $38,000 award was inadequate.
Initially, we must determine whether Farm Bureau can raise the issue of the excessiveness of the jury award as it pertains to Smith's past and future loss of wages.
An appeal can not be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. LSA-C.C.P. Art. 2085.
Subsequent to the signing of judgment in the case sub judice, Farm Bureau filed a motion and order in the trial court to deposit funds into the registry of the court. In part, the motion, which was subsequently granted, stated:
"Defendants, LESTER V. FANNIN and LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, desire to tender into the registry of the court, unconditionally, the sum of $56,640.63, which said amount is the amount which defendants unconditionally admit to be due to plaintiff. Said amount encompasses the total amount of the judgment, less the $15,000.00 in excessive medical expenses which FARM BUREAU is appealing, with interest from date of judicial demand until Wednesday, June 20, 1990."
Simultaneously, in its motion for a suspensive appeal, Farm Bureau further stated:
"Defendants, LESTER V. FANNIN and LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, have unconditionally tendered into the registry of the court the sum of $56,640.63, which said amount the defendants acknowledge is due in this proceeding.
* * * * * * *204 Subject to the unconditional tender of said amount, defendants, LESTER V. FANNIN and LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, desire to suspensively appeal the additional amount of said judgment. There is approximately a $10,000.00 difference between the amount tendered and the payoff of the judgment, including principal and interest.
* * * * * *
LESTER V. FANNIN and LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY desire to suspensively appeal the judgment, subject to said tender."
Based on these admissions, we cannot consider Farm Bureau's allegation and argument in brief that the jury's award for past and future loss of wages was excessive. See Adolph v. Sewerage & Water Board Pension Com., 202 So.2d 664 (La. App. 4th Cir.1967), writ denied, 251 La. 398, 204 So.2d 576 (1967). Clearly, there has been an unconditional admission by Fannin and Farm Bureau of all aspects of the judgment except the jury's award for medical expenses.
Smith argues that the jury's $38,000 award for future loss of wages is inadequate. She contends that the jury failed to consider her loss of earning capacity.
Loss of wages resulting from an offense or quasi-offense must be proven with reasonable certainty. Damages which are purely conjectural or uncertain are not allowed. Meyers v. Imperial Cas. Indem. Co., 451 So.2d 649 (La.App. 3rd Cir. 1984).
Assuming for the moment the correctness of Smith's contention that she will suffer a loss of $4,000 yearly because of her inability to work at the same pay level she received prior to the raccoon bite, we find that Smith failed to carry her burden of proof. The record is void of any evidence of Smith's work life expectancy. No economist testified, and Smith's attempt to introduce a table of the United States Vital Statistics, without any testimonial foundation, was properly rejected by the trial judge. In the absence of such record evidence, we are unable to examine Smith's contention. Therefore we find that the jury's award of $38,000 for Smith's past and future loss of wages was not manifestly erroneous.

FUTURE MEDICAL EXPENSES
Farm Bureau contends that the jury erred in awarding Smith an amount for future medical expenses. The jury's total award for medical expenses was $26,000. Farm Bureau asserts that as of the date of trial Smith's actual medical expenses totaled $10,878.49, of which it had paid $1,000 prior to trial; accordingly, the remaining $16,121.51 represented an award for Smith's future medical expenses.
Future medical expenses must be proven with some degree of certainty. Absent evidence of future medical expenses, no award can be made. Simmons v. Custom-Bilt Cabinet & Supply, 509 So.2d 663 (La.App. 3rd Cir.1987). An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the projected specific expenses, should be required for such an award. Pitts v. Bailes, 551 So.2d 1363 (La.App. 3rd Cir.1989), writs denied, 553 So.2d 860 (La. 1989), 556 So.2d 1262 (La.1990).
Smith, who was 52 years of age at the time of the trial, was treated by Dr. Riad Chaudry, her family physician, and Dr. Ronald Pryer, a clinical psychologist, for injuries associated with the raccoon bite.
Relevant to future medical expenses, Dr. Chaudry testified that Smith developed an ulcer after the raccoon bite and that he found the two related. At the time of trial, Smith's ulcer was being treated with an ongoing prescriptive medication, Axid. Furthermore, in his examination of Smith just prior to trial, Dr. Chaudry found that she was still depressed.
Dr. Pryer, who began treating Smith approximately 13 months after the raccoon bite, testified that his examination of the medical records shows that Smith's depression associated with post-traumatic stress *205 syndrome exhibited itself shortly after the raccoon bite and remained untreated until he began counseling Smith. Although he found that Smith's depression had improved, he was uncertain about the length of time she would require psychological treatment in the future; moreover, he stated that Smith's future recovery could not be predicted by anyone.
Dr. Paul Ware, a psychiatrist, examined Smith one time at Farm Bureau's request, and testified before the jury as an expert witness. Dr. Ware confirmed Dr. Pryer's diagnosis of post-traumatic syndrome, but disagreed on Smith's need for future treatment.
In light of the conflicting testimony on this issue, we cannot say that the jury erred in awarding Smith an amount for future medical treatment. Considering her need for continued prescriptive medication and psychological counseling, we likewise cannot say that the jury was clearly wrong in its monetary assessment of Smith's future medical needs.

PENALTIES
Smith contends that the jury was manifestly erroneous in its conclusion that Farm Bureau was not arbitrary and capricious in failing to pay her the maximum limits of the medical payments coverage issued to its insured, Lester Fannin. Farm Bureau argues on appeal that Smith neither made demand for payment nor submitted a satisfactory proof of loss as required by LSA-R.S. 22:658.
LSA-R.S. 22:658(A) requires an insurer to pay any claim due any insured within 60 days of receipt of satisfactory proof of loss. Section (B)(1) further states:
"B.(1) Failure to make such payment within sixty days after receipt of such proofs and demanded therefore, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss ..."
In Belt v. Farm Bureau Ins. Co., 524 So.2d 1256, 1258 (La.App. 3rd Cir.1988), writs denied, 526 So.2d 799, 803 (La.1988), we stated:
"A satisfactory proof of loss is that which is sufficient to fully apprise the insurer of the insured's claim. McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La. 1985). To qualify as a "demand" for purposes of imposition of statutory penalties and attorney's fees for arbitrarily refusing to pay medical expenses, the communication must fully inform the insurer of the plaintiff's intention to claim payment under the policy for a specified amount. Abraham v. Hanover Ins. Co., 420 So.2d 526 (La.App. 2nd Cir.1982); Hut of La., Inc. v. Zurich Ins. Co., 372 So.2d 687 (La.App. 1st Cir.1979).
* * * * * *
Demand for payment may be oral or written and what constitutes sufficient demand is to be determined in light of the facts and circumstances in each case. Wilkins v. Allstate Ins. Co., 173 So.2d 199 (La.App. 1st Cir.1965)."
R.S. 22:658 is penal in nature and is to be strictly construed. The sanctions and penalties should only be imposed in those instances in which the facts negate probable cause for non-payment. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). A reviewing court will not disturb a trial court's finding on the issue of penalties and attorney's fees absent manifest error. Henson v. Handee Corp., 421 So.2d 1134 (La.App. 2nd Cir.1982).
Farm Bureau's policy of insurance issued to Fannin provides for the maximum payment of $1,000 to persons injured on Fannin's premises. As noted above, the incident of the raccoon bite occurred on May 25, 1988. Smith was treated on the day of the injury at LaSalle General Hospital, and was rehospitalized there for complications associated with the raccoon bite from June 9, 1988, to June 20, 1988. These initial treatments alone exceeded $6,000.
Michael O'Neal, the Farm Bureau adjustor assigned to this claim, testified that Farm Bureau received notice of this incident *206 in September 1988. On October 6, 1988, O'Neal recorded a telephone statement from Smith detailing the incident and her subsequent medical treatment, including her 12 day hospitalization. In that conversation, Smith also outlined her medical expenses. On October 18, 1988, Dr. Chaudry provided Farm Bureau with information on Smith's treatment and advised it that his medical charges as of that time exceeded $1,000. As of that date, O'Neal admitted at trial that he had a sufficient proof of loss and that Farm Bureau's policy to Fannin provided coverage for Smith's medical expenses.
O'Neal testified that a check for the $1,000 was not sent to Smith at that point because it had noticed that Blue Cross, Smith's personal medical insurer, had made payments, and that as a co-insurer, consultation was necessary to determine the disposition of Farm Bureau's payment.
The jurisprudence is clear that demand for payment is not necessary when an insurer is fully aware of a claim and only the amount due is disputed because of co-insurance. Youngblood v. Allstate Fire Ins. Co., 349 So.2d 462 (La.App. 3rd Cir. 1977). Smith did not file suit against Farm Bureau until May 23, 1989, and Farm Bureau did not unconditionally tender the $1,000 until July 25, 1989. Moreover, in the period of time before filing of suit, Fannin, Smith's brother-in-law, testified without refutation that he personally consulted with Farm Bureau, urging them to pay the medical expenses; despite his protestation, Farm Bureau simply advised him that payment was in the works.
Based on the foregoing, we find that the jury was manifestly erroneous in denying Smith's claims for penalties and attorney's fees. Clearly Farm Bureau was arbitrary and capricious and was without just cause in unduly delaying payment of the medical expense provided by its insurance contract. For these reasons, we shall reverse the jury's determination of this issue and order the judgment awarding Smith 10% penalties and an attorney's fee of $500.

COSTS
Smith contends that the trial court erred in casting her with 40% of the court costs.
The trial court "may render judgment for costs ... as it may consider equitable." LSA-C.C.P. Art. 1920. On review, an appellate court can reverse a trial court's assessment of costs only upon a showing of abuse of discretion. State v. Nicholls College Foundation, 592 So.2d 419 (La.App. 1st Cir.1991).
After carefully reviewing the record, we cannot say that the trial court abused its discretion in allocating costs in proportion to the degree of fault assessed to each party.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects except for the jury's disallowance of Smith's claim for penalties and attorney's fees associated with Farm Bureau's non-payment of medical expenses. To that extent the judgment of the trial court is reversed and recast, in part, as follows: IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Katherine Sue Smith and against Louisiana Farm Bureau Casualty Insurance Company, casting it with penalties of 10% on the $500 medical payment, and attorney's fees of $500. All costs of this appeal are assessed to Farm Bureau.
AFFIRMED IN PART: REVERSED IN PART AND RENDERED.
NOTES
[*] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.