647 So.2d 606 (1994)
William Roy SCHNEIDER, Plaintiff-Appellee,
v.
David C. MAYO, et al., Defendants-Appellants.
No. 94-527.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Writ Denied February 17, 1995.
*607 Hal James Scott, Jonesville, Chris J. Roy, Jr., Alexandria, for William Roy Schneider.
Johnny Everett Dollar, Monroe, for David C. Mayo, et al.
Virgil Russell Purvis, Jr., Jonesville, for Joe Tom Trunzler, Sheriff & Ex-Officio.
Before GUIDRY, C.J., and LABORDE and SAUNDERS, JJ.
GUIDRY, Chief Judge.
This is an appeal from a trial court judgment nullifying a tax sale of 200 acres of immovable property in Catahoula Parish. The trial court also declared plaintiff-appellee, William Schneider, the owner of the tract of land involved. Additionally, the trial court awarded $10,000 in damages in favor of defendant-plaintiff in reconvention and cross-claim-appellant, Reverend David Mayo, the tax purchaser, and against defendant-appellant, Thomas Jackson, the Sheriff and Ex-Officio Tax Collector for Catahoula Parish.
The successor sheriff, Joe Tom Trunzler, appealed suspensively and contends that the trial court erred in the following respects:
(1) awarding damages in favor of Mayo and against the sheriff;
(2) assessing all court costs to the sheriff;
(3) nullifying the tax sale and declaring Schneider the owner.
Mayo devolutively appeals and asserts the trial court erred in nullifying the tax sale and awarding insufficient damages. Schneider answers the appeal of Mayo seeking damages for frivolous appeal.
For the following reasons, we dismiss Mayo's appeal insofar as he questions correctness of the trial court's judgment nullifying the tax sale and reverse the $10,000 award in favor of Mayo and against the sheriff. We also reverse the assessment of court costs against the sheriff and reassess costs at the trial level to Mayo.

FACTS AND PROCEDURAL HISTORY
The pertinent facts are essentially not in dispute. The 200 acre tract of land at issue was originally part of a larger 360 acre tract owned by James Brown. On March 12, 1979, James Brown sold the 360 acres to Durwood Brown for $320,000. The act of sale shows that Durwood Brown paid $20,000 down on the sale and signed a promissory note for the balance. James retained a "special mortgage *608 and vendor's privilege" on the property to secure payment of the note.
On October 16, 1986, Sheriff Jackson's office sent Durwood Brown notice of the amount of ad valorem taxes due for 1986. The notice stated that the taxes were due and payable on or before January 1, 1987. Durwood Brown did not pay the taxes due on the property and they became delinquent. On February 2, 1987, Durwood Brown and his wife, Pixley Brown, executed a dation en paiement transferring the entire 360 acre tract of land back to James Brown in consideration of his cancellation of the remaining outstanding debt. The dation en paiement was recorded in the Catahoula Parish conveyance records on February 27, 1987.
On March 6, 1987, Sheriff Jackson's office sent a notice of delinquency to Durwood Brown by certified mail, return receipt requested. The notice was filed in the public records on March 12, 1987. Durwood Brown received the notice on March 13, 1987 and, once again, did not pay the taxes due. The property was advertised for sale in the Catahoula News-Booster on April 16, 1987 and May 14, 1987. On May 20, 1987, Mayo purchased at tax sale 200 acres of the 360 acres offered. The remaining 160 acres was not sold. Mayo's tax deed was executed on that date and recorded the next day, May 21, 1987. The notice of delinquency was cancelled from the public records. Mayo thereafter paid the taxes for 1987, 1988 and 1989 on the 200 acres which he purchased at the tax sale.
On December 1, 1989, James Brown died testate and bequeathed the 360 acre tract by particular legacy to his nephew, William Roy Schneider. Schneider was put into possession of the property by judgment dated June 28, 1990.
On August 15, 1990, Schneider, through his legal counsel, sent a letter to Mayo in which he requested that Mayo execute a redemption deed to the James Brown estate. In exchange, he offered to reimburse Mayo for the taxes paid plus a five percent statutory penalty on the first year's taxes and one percent per month statutory interest. In other words, Schneider offered to redeem the property purchased by Mayo at the May 20, 1987 tax sale. Mayo did not respond to this correspondence because, in his opinion, he owned the 200 acre tract by virtue of the passage of the three year redemption period.
On October 11, 1990, Schneider filed the present suit to rescind the tax sale joining Mayo and Sheriff Jackson as defendants. The sheriff answered the petition nominally, claiming no interest in the suit and asserting a willingness to obey the trial court's orders and decrees with respect to the litigation. Thereafter, on October 26, 1990, Mayo answered Schneider's petition and, therewith, filed a reconventional demand against Schneider, the succession of James Brown, Durwood Brown and Pixley Brown. Mayo asserted his ownership of the property by virtue of the tax deed and the passage of the redemption period.
On June 2, 1992, Mayo filed an amended reconventional demand naming Sheriff Jackson as defendant.[1] In support of this demand, Mayo asserted that the sheriff negligently failed to check the public records and notify the proper party in interest, James Brown, of the delinquent taxes and pending tax sale. Mayo prayed for an award of damages against Sheriff Jackson, including the value of the land, attorneys fees, penalties and interest. The sheriff filed an answer generally denying the allegations of Mayo's cross-claim.
This matter was tried on February 2, 1993. At the beginning of trial, pursuant to the provisions of La.Const. art. VII, Section 25(C), Schneider's counsel tendered to Mayo and placed into the registry of the court a check in the amount of $3,272.65, representing the total of taxes, interest, and penalties to which Mayo is entitled in the event of judicial annulment. The parties stipulated that, by allowing the funds deposited in the court registry, Mayo did not thereby become barred from asserting his claim to the property.
*609 Schneider testified that he was a witness to the dation en paiement executed between Durwood Brown and James Brown. Thereafter, in 1987, James Brown placed the entire 360 acres into the United States Department of Agriculture Stabilization and Conservation Service's (ASCS) Conservation Reserve Program. He was required to keep the property unplanted and out of cultivation in exchange for a $45 per acre rental. The ASCS paid for one-half of the cost of planting Bermuda grass on the uncultivated land. According to Schneider, he was unaware of the tax sale until some time after the death of James Brown.
Mayo testified that he was unaware of any problem with his tax deed or the tax sale until Schneider's counsel wrote him the previously mentioned letter dated August 15, 1990. After purchasing the land, he did nothing to physically possess it, and it lay fallow. Mayo did not respond in writing to the letter because the three year redemption period had expired.
L.C. Scott, the deputy tax collector employed by Sheriff Jackson, testified that his office issues delinquency notices to the property owner of record pursuant to the approved tax roll. He complied with this procedure by mailing the tax notice to Durwood Brown on October 16, 1986. As tax collector, he sends notices to the person listed as owner on the assessor's tax roll and cannot change any records thereon. At the time of this delinquency, Durwood Brown was listed as owner on the assessor's tax roll. Notice of delinquency was sent to him by certified mail and was received by Kim Brown, who signed the return receipt. According to Scott, his office properly sent notice as required by law to the record owner in satisfaction of its legal duty. When Durwood Brown did not pay or respond to the notice of delinquency, Scott tried several times to contact him on the phone, to no avail. Scott was unaware, at the time of the tax sale, that the sheriff's office is also obliged to check conveyance records within 30 days of the tax sale to determine if the property was transferred from the tax debtor to a third party in the period between delinquency and notice thereof. (La. R.S. 47:2180 D) He explained that this requirement was a statutory revision he had overlooked. To his knowledge, James Brown never received any notice from the sheriff's office that the property which had been reconveyed to him was to be sold for nonpayment of taxes.
The trial court took the case under advisement and rendered oral reasons for judgment on November 15, 1993. Without explicitly stating so, the trial court apparently found that the failure to serve the notice of delinquency on the actual owner (James Brown) at the time notice was sent was fatal to the validity of the tax sale. The trial judge ordered the tax sale annulled and the public records amended to reflect that Schneider is the owner of the property. Further, he awarded $10,000 in favor of Mayo and against Sheriff Jackson and assessed all costs to Sheriff Jackson. The trial court signed a judgment in accordance with these reasons on December 6, 1993. Notice of judgment was mailed to the parties on December 21, 1993.
The successor sheriff, Joe Tom Trunzler, appealed suspensively on January 3, 1994. Thereafter, on January 6, 1994, Mayo, in proper person, filed a pleading captioned "Motion and Order to Release Funds From the Court Registry". The trial court, pursuant to the motion, signed an order on that date which directed the Catahoula Parish Clerk of Court to release all funds held in the court registry plus interest accrued thereon in connection with this matter. The clerk of court issued a check payable to Mayo in the amount of $3,350.23, representing the $3,272.65 tendered by Schneider at trial plus interest accrued from the date of trial to January 6, 1994. Mayo accepted such payment and thereafter devolutively appealed on February 18, 1994. Subsequent to the lodging of Mayo's appeal, this court, ex proprio motu, issued a rule to show cause why his appeal should not be dismissed, pursuant to La. C.C.P. art. 2085, because of his acquiescence in the judgment of the trial court, insofar as it resolved the issue as to validity of the tax sale in controversy. This rule was made returnable on November 8, 1994.

*610 VALIDITY OF THE TAX SALE AND RULE TO SHOW CAUSE
Mayo contends that the trial court erred in nullifying the tax sale. We do not consider the issue of the validity of the tax sale because we conclude that, by accepting the tender made by plaintiff, William Roy Schneider, after rendition and signing of the judgment nullifying the tax sale, Mayo voluntarily and unconditionally acquiesced in that portion of the trial court's judgment which annulled the tax sale. Therefore, pursuant to La.C.C.P. art. 2085, Mayo is precluded from appealing that issue.
La.C.C.P. art. 2085, which is captioned "Limitations on Appeals", provides as follows:
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment. (Emphasis ours)
The jurisprudence has generally strictly construed this statute to allow forfeiture of the right to appeal only in situations in which the party's intent to acquiesce is clearly demonstrated. In Hoyt v. State Farm Mutual Automobile Insurance Co., 413 So.2d 1003 (La.App. 3rd Cir.1982), writ denied, 423 So.2d 1180 (La.1982), this court, in quoting Koerner and Lambert, A Professional Law Corporation v. Allstate Insurance Co., 363 So.2d 546 (La.App. 4th Cir.1978), stated the applicable law as follows:
Payment of a judgment, even payment without express reservation of the right to appeal, does not necessarily constitute voluntary and unconditional acquiescence which forfeits a party's right to appeal under C.C.P. article 2085. Charles C. Cloy General Contractors, Inc. v. DiVincenti Bros., Inc., 308 So.2d 493 (La.App. 1st Cir.1974). Acquiescence in a judgment is never presumed, and the party alleging abandonment must establish by direct or circumstantial evidence that the party now appealing intended to acquiesce and to abandon his right to appeal. Major v. Louisiana Department of Highways, 327 So.2d 515 (La.App. 1st Cir.1976). Furthermore, appeals are favored in law, and forfeiture of a party's right to appeal through acquiescence should be decreed only when the party's intention to acquiesce and to abandon his right of appeal is clearly demonstrated. Kendrick v. Garrene, 231 La. 462, 91 So.2d 603 (1956).
The funds applied for and which Mayo accepted from the court registry was the amount to which he is constitutionally entitled to receive only upon effective annulment of the tax sale. In that regard, La. Const. art. VII, Section 25(C) provides:
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale. (Emphasis ours)
The tax sale in this case was not annulled by the trial court because the taxes were paid prior to the date of the sale. Thus, the highlighted provision for payments due to the tax purchaser upon annulment is applicable. At trial, Schneider's attorney placed the funds into the court registry whereupon the following colloquy took place (Tr. pp. 96-97):
MAYO'S COUNSEL: ... if counsel and the parties wish to place into the registry *611 of the court a sufficient amount for the stakeholder (Mayo) to receive in the event that this sale is annulled, we have no objection to those funds being placed into the registry of the court. We will not agree at this time to accept that in satisfaction of our claims obviously.
* * * * * *
SCHNEIDER'S COUNSEL: Judge, we'll do that and have it ready before the trial's terminated. We'll do that math.
JUDGE: Okay. Alright.
MAYO'S COUNSEL: That's fine, your honor. (Emphasis ours)
After the judgment was signed annulling the tax sale and decreeing Schneider as owner, Mayo removed said money. By doing so, he showed a clear intent to acquiesce in the trial court's judgment insofar as it annulled the tax sale. As such, Mayo lost his right to appeal this part of the judgment pursuant to La.C.C.P. art. 2085.
Under the express provisions of La. Const. art. VII, Section 25(C), a tax purchaser is entitled to receive, upon judicial annulment of the tax sale, reimbursement of the price, all taxes and costs paid and ten percent per annum interest on such amounts. The judgment cannot "have effect", insofar as the annulment is concerned, until the tax purchaser is actually reimbursed. Therefore, reimbursement to the tax purchaser is a condition precedent to the effectiveness of the judgment. In this regard, the word "judgment", as contemplated by the constitutional provision, in our view, connotes a final and definitive judgment because it is only after definitive judgment of annulment that the tax purchaser is entitled to reimbursement.[2]
If the tax purchaser, upon rendition of the final judgment annulling the tax sale by the trial court, accepts the reimbursement of funds to which he is constitutionally entitled, he thereby gives "effect" to the judgment annulling the tax sale. By giving "effect" to the judgment, he necessarily acquiesces in the merits decided, i.e., the tax sale annulment. The tax purchaser therefore waives his right to appeal from the judgment annulling the tax sale when he accepts reimbursement after rendition of the judgment.
The present case is clearly distinguishable from the jurisprudence which has generally preserved a party's right to appeal despite its payment of a judgment without reserving the right of appeal. See Koerner and Lambert, A.P.L.C., supra.
In the instant case, while Mayo lost the property through annulment of the tax sale, he also, by virtue of the operation of La. Const. art. VII, Section 25(C), won the right to reimbursement of all amounts paid by him plus interest when that judgment became definitive. Mayo was, by operation of law, a judgment creditor who purposefully moved for and accepted payment of the amount to which he was legally entitled only upon annulment by judgment of the tax sale. By accepting the tender, Mayo not only gave "effect" to the judgment but also acquiesced in the merits decided thereby, insofar as the tax sale is concerned.

DAMAGES
The trial court awarded Mayo damages against the sheriff for the latter's alleged negligent failure to notify the transferee, James Brown, of the delinquency after the tax sale. We reverse, concluding that the sheriff discharged his duty to notify the delinquent taxpayer, Durwood Brown, and that an award of damages against the sheriff and ex-officio tax collector for his alleged negligent failure to notify the transferee is neither jurisprudentially nor statutorily authorized.
When the tax roll was filed in the Clerk of Court's office, Durwood Brown was the owner of the property. He was notified of the *612 amount due by notice dated October 16, 1986. Likewise, he was still owner on January 2, 1987, the date upon which the taxes became delinquent. Durwood Brown transferred the 360 acres by dation en paiement on February 2, 1987, and that transfer was recorded in the conveyance records on February 21, 1987. Durwood Brown received the delinquency notice on March 13, 1987.
Two statutes, La.R.S. 47:2178 and 2180, are pertinent to this issue. The former provides as follows:
No sale, pledge, mortgage or other alienation or encumbrance of property made after the tax roll shall have been filed in the office of the recorder of mortgages, shall affect the taxes assessed thereon, but the same shall still be seized, advertised and sold as the property of the taxpayer to whom assessed, to enforce payment of delinquent taxes. (Emphasis ours)
Clearly, by the mandate of this statute, the dation en paiement of the property from Durwood Brown to James Brown, which occurred after the tax roll was filed in the Clerk of Court's office, had no effect upon the taxes assessed or the taxpayer to whom the taxes were assessed. Further, if pursuant to this statute the property is to be seized, advertised and sold as the property of the taxpayer to whom assessed, this mandates that the notices required to effectuate a valid sale be made to the taxpayer.
La.R.S. 47:2180 provides, in pertinent part, as follows:
A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
* * * * * *
D. Within thirty days after the tax sale, or as soon thereafter as possible, the tax collector shall research the records of the clerk of court for transfers on all property sold. Within thirty days of finding a transfer of any property sold at a tax sale, the tax collector shall attempt to serve the new owner with a certified notice that the property was sold and include in the notice the amount necessary to redeem the property. This notice shall also advise the owner that the property may be redeemed at any time within three years from the date of recordation of the sale. This shall serve as the required notice to the record owner in Subsection A of this Section. (Emphasis ours)
The sheriff complied with his ministerial duties under subsection (A) by sending notice of the delinquency to Durwood Brown. Admittedly, however, L.C. Scott, the assistant tax collector, did not perform a post-tax sale search of the public records as required by subsection (D). This paragraph was added by the legislature in 1985. Scott stated that, at the time of the tax sale in 1987, he was unaware of the provision or that he was required to perform such a search. His failure to do so, however, is not grounds for an award of damages against Sheriff Jackson.
While subsection (D) suffers from unartful draftsmanship, it is clear that the notice to the subsequent transferee contemplated thereunder, if accomplished, is considered sufficient to satisfy the notice requirements of subsection (A) on the record owner. We observe that La.R.S. 47:2180 provides for notice of tax delinquency on the taxpayer or the record owner or the actual owner of the immovable property. Accordingly, if proper notice is given to the taxpayer, notice to the record or actual owner is not required under subsection (A).
Subsection (D) requires that a search of the public records be performed within 30 days of the tax sale. If a subsequent transfer is found pursuant to the search, the tax collector must attempt to notify the new owner of the tax sale, the amount necessary to redeem the property, and the redemption period. The key word, attempt, is all that is required. The tax collector is not under a *613 specific mandate to actually notify the subsequent transferee. In this case, notice was properly sent to Durwood Brown pursuant to subsection (A). The tax collector failed to perform a post-tax sale public records search. However, even if he had done so, he would only have been required to attempt to notify James Brown, the subsequent transferee. If this attempt would have resulted in notice to James Brown, this notice would have been sufficient to satisfy the requirements of notice if required under subsection (A). In other words, the notice that is required by the statute is that which is contemplated by subsection (A). In the present case, the sheriff properly notified Durwood Brown pursuant to subsection (A). Having done so, he discharged his ministerial duties under the statute. While subsection (D) requires the tax collector to search the conveyance records, upon finding a transfer, he must merely attempt to serve the new owner with notice of the tax sale and the redemption amount. For his failure to do so, the statute provides no sanction.
The trial court erred in finding that, under the particular facts of this case, the sheriff negligently failed to notify James Brown, the subsequent transferee. The sheriff was not negligent because he complied with the notice requirements of La.R.S. 47:2180(A). The trial court's award of damages against the sheriff is erroneous and will be reversed and Mayo's demands against the sheriff dismissed with prejudice.

COURT COSTS
The trial court assessed all costs of court to Sheriff Jackson.
The trial court is empowered to "... render judgment for costs ... as it may consider equitable". La.C.C.P. art. 1920. As an appellate court, we can reverse a trial court's assessment of costs only upon a showing of abuse of discretion. Smith v. Louisiana Farm Bureau Casualty Insurance Co., 603 So.2d 199 (La.App. 3rd Cir.1992), writ denied, 605 So.2d 1115 (La.1992). After reviewing the record, we conclude that the trial court abused its discretion in assigning all costs to Sheriff Jackson. This finding is predicated upon our absolving the sheriff from liability and reversal of the award rendered in favor of Mayo and against Sheriff Jackson. We will assess all costs of these proceedings at the trial level and on appeal to Mayo.

FRIVOLOUS APPEAL
Answering the appeal of Mayo, Schneider seeks damages for frivolous appeal pursuant to La.C.C.P. art. 2164. This statute is penal in nature and must be strictly construed. Damages for frivolous appeal are awardable when it manifestly appears that the appeal is taken solely for delay purposes or that appealing counsel does not seriously believe the position he is advocating. Hodapp v. American Indemnity Co., 618 So.2d 32 (La.App. 3rd Cir.1993); Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3rd Cir. 1991).
We conclude that no such situation exists in this case. Were it not for Mayo's acquiescence in the judgment through his removal of funds from the court registry, a serious issue concerning the validity of the tax sale would have been presented. There is no clear evidence of a dilatory intent or the lack of sincerity in the advocated position. We therefore deny any damages for frivolous appeal.

DECREE
For the above and foregoing reasons, we dismiss David Mayo's appeal and affirm the judgment of the trial court annulling the tax sale at issue. We reverse the $10,000 award rendered in favor of defendant-plaintiff in cross-claim, David Mayo, and against defendant, Sheriff Thomas Jackson, and order cross-claimant's demands dismissed with prejudice. All costs at the trial level and on appeal are to be paid by David Mayo.
AFFIRMED IN PART; REVERSED IN PART; AND, RENDERED.
NOTES
[1] This pleading, which Mayo filed against an already named co-defendant, was erroneously styled as a "reconventional demand". The proper procedural title for such a pleading is a "cross-claim". We shall hereafter refer to this as a "cross-claim".
[2] La.C.C.P. art. 1841 provides, in pertinent part:

A judgment that determines the merits in whole or in part is a final judgment.
La.C.C.P. art. 1842 (repealed by Act 521 of 1990, effective January 1, 1991) provided:
A final judgment is definitive when it has acquired the authority of the thing adjudged. This suit was instituted on October 11, 1990. The repealed article applies to this case because Act 521, § 5 provides that it "... shall apply to all civil actions filed on or after January 1, 1991".